IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-609-D

| | |
|---|---|
| LYNN BRUCE MCNEELY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Lynn Bruce McNeely, Jr. ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 13, 16). Both parties filed memoranda in support of their respective motions (D.E. 14, 17). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 18). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 24 October 2006, alleging a disability onset date of 1 March 2006. Transcript of Proceedings ("Tr.") 18. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 18. On 12 November 2009, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 319-59. In a written decision dated 3 February 2010, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 18-26. Plaintiff timely requested review by the Appeals Council. Tr. 14. The Appeals Council denied the request for review on 8 September 2011. Tr. 2-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 29 October 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. §

1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C. **Findings of the ALJ**

Plaintiff was 34 years old on the alleged onset date of disability and 37 years old on the date of the administrative hearing. Tr. 25 ¶ 6; 324-25. He testified that he has a high school education and has taken some classes in community college. Tr. 325. His extensive past work includes employment as a custodian. Tr. 24 ¶ 6; 328.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 20 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: bipolar disorder, adjustment disorder, history of alcohol dependency, history of polysubstance abuse, and schizoaffective disorder. Tr. 20 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 21 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to performing simple, routine, repetitive tasks in a non-production, non-demanding position with no more than occasional interaction with others and no interaction with the public. Tr. 22 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was capable of performing his past relevant work as a custodian. Tr. 24 ¶ 6. In the

alternative, disregarding for analytical purposes plaintiff's ability to do his past relevant work, the ALJ found at step five, based on the testimony of a vocational expert, that plaintiff would be capable of making a vocational adjustment to other work, including general kitchen helper, hand packager, and laundry folder. Tr. 26 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 26 ¶ 7.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based

on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff contends that the ALJ committed reversible error by purportedly failing to discuss the opinion of consulting examining state agency psychologist James S. Ward, Ed.D. and by finding plaintiff able to return to his past work as a custodian. Each ground is discussed in turn below.

### C. ALJ's Failure to Discuss Dr. Ward's Opinion

In his report from his 10 February 2008 evaluation of plaintiff, Dr. Ward noted plaintiff's self-reported mental health history, his current complaints relating to anger and other problems, and his performance on several psychological tests. Tr. 185-87. Dr. Ward found, among other things, that plaintiff had "a great deal of difficulty relating to others," had "difficulty with stress . . . [which] agitates him and makes him angry," and "was able to understand and retain instructions and do the repetitive tasks that were asked . . . [of] him." Tr. 186-87. He diagnosed plaintiff with bipolar disorder, possible post traumatic stress disorder ("PTSD"), a history of abuse of alcohol and illegal drugs, schizotypal personality disorder, and major depressive

disorder. Tr. 187.  He opined that "[i]t would be very difficult for this gentleman to work in meaningful employment given his mental problems."  Tr. 187.

As plaintiff contends, the ALJ did not expressly discuss Dr. Ward's evaluation of him, including specifically Dr. Ward's opinion that it would be very difficult for plaintiff to work.[2] By not doing so, plaintiff argues that the ALJ failed to meet his obligation to sufficiently explain the weight he gave probative evidence.  *See Sterling*, 131 F.3d at 439-40.

The court finds, however, that the ALJ's decision does, in fact, indicate the weight he gave Dr. Ward's evaluation, albeit indirectly.  The ALJ stated that he "has considered the state agency's residual functional and mental capacity assessments," "finds they give fair, but not sufficient consideration to the claimant's impairments and limitations arising there from," and "gives such assessments some, but not great weight."[3]  Tr. 24 ¶ 5.  One such assessment was a 23 February 2008 psychiatric review technique form completed by nonexamining consulting state agency psychologist Cal VanderPlate, Ph.D., ABPP.[4]

In the form, Dr. VanderPlate presents a summary of many of the findings in Dr. Ward's report:

> James S. Ward: 2/7/08 CCPE: dressing & grooming adequate. Test behavior was good and clmt forthright and verbal.  Reported physical problems from MVA when inebriated.  C/O nightmares.  C/O afraid of reprisals from past beh.; makes

---

[2] The ALJ did expressly state repeatedly that he considered all the evidence of record, which would obviously include Dr. Ward's evaluation.  *See* Tr., *e.g.*, 18 ("After careful consideration of all the evidence . . . ."), 20 ("After careful consideration of the entire record . . . ."), 22 ¶ 5 (same).  Plaintiff does not argue that the ALJ failed to consider Dr. Ward's evaluation but rather, as indicated, that he failed to discuss it.  The same considerations discussed below showing that the ALJ did adequately indicate the weight he gave Dr. Ward's evaluation necessarily, of course, refute any notion that he failed to consider it.

[3] Although the Commissioner suggests that this determination by the ALJ refers directly to Dr. Ward's opinion about plaintiff, that appears clearly not to be true.  Among other reasons, as discussed further below, the ALJ's finding that the assessments did not give sufficient consideration to plaintiff's impairments and the resulting limitations could not apply to Dr. Ward's opinion because his opinion seemingly recognized greater limitations on plaintiff than the ALJ found.

[4] "ABPP" appears to indicate certification by the American Board of Professional Psychology.  *See* ABPP website, http://www.abpp.org/i4a/pages/index.cfm?pageid=3285 (last visited 15 Jan. 2013).

> him paranoid, but he says that his paranoia is reality based. C/O afraid of the dark and attacks at night. He said he sees people, but cannot recognize them or they do not talk to him. No classical delusions or hallucinations. Oriented. Mr. McNeeley was able to name large cities, Presidents, talk about [current] events, and do simple math. He could interpret simple proverbs correctly and answered commonsense questions correctly. Estimated intelligence as average to above. CE statement: clmt has a great deal of difficulty relating to others, although he does have the skills that required for verbal discussions. He has difficulty with stress and this agitates him and makes him angry. He was able to understand and retain instructions and do the repetitive tasks that were asked to him, but those were minimal in his evaluation. I believe the results are valid.
> Dx: Bipolar II, MDD, R/o PTSD. Hx polySA. Schizotypal personality d/o.

Tr. 208. Dr. VanderPlate then states, "MSS [*i.e.*, medical source statement ] of Dr. Ward adopted with strong weight." Tr. 208. Consistent with this statement, Dr. VanderPlate's diagnoses of plaintiff closely resemble those of Dr. Ward: possible[5] bipolar disorder (Tr. 199), possible PTSD (Tr. 201), history of substance abuse (Tr. 204), possible schizoaffective personality disorder (Tr. 203), and mood disorder not otherwise specified (Tr. 199). Thus, by indicating that he was giving some weight to the assessment of Dr. VanderPlate, which relied to a significant extent on Dr. Ward's evaluation, the ALJ indicated that he gave some weight to Dr. Ward's evaluation. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (holding that ALJ's adoption of conclusions of physicians who were necessarily aware of plaintiff's obvious obesity constituted satisfactory consideration of the obesity, which the ALJ did not otherwise address).

The similarity between the severe impairments the ALJ found plaintiff to have and the diagnoses given plaintiff by Dr. Ward confirm this analysis. The severe impairments were, as indicated, bipolar disorder, adjustment disorder, history of alcohol dependency and polysubstance abuse, and schizoaffective disorder. Tr. 20 ¶ 3. Dr. Ward's diagnoses were,

---

[5] Dr. VanderPlate indicates the possible nature of this and other diagnoses by the abbreviation "R/O," meaning rule out. *See, e.g.*, Carlton E. Munson, Ph.D., *The Mental Health Diagnostic Desk Reference* 78-79 (2d ed. 2001).

again, bipolar disorder, possible PTSD, a history of abuse of alcohol and illegal drugs, schizotypal personality disorder, and major depressive disorder. Tr. 187.

The ALJ did not, of course, adopt Dr. Ward's opinion that plaintiff would find working very difficult to the extent that this opinion signified that plaintiff was disabled. That opinion was on an issue reserved to the Commissioner—whether a claimant is disabled—and therefore was not entitled to any special weight due to its source, although the ALJ was still required to address it. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996). Dr. VanderPlate also did not adopt Dr. Ward's opinion. He found plaintiff able to understand and remember simple instructions, carry out simple tasks, accept supervision, manage stress, deal with others subject to some restrictions, and relate to the public. Tr. 226. The ALJ found that Dr. VanderPlate's and the other consultants' assessments did not give "sufficient consideration to [plaintiff's] impairments and limitations arising there from." Tr. 24 ¶ 5. Thus, in effect, he found that Dr. VanderPlate went too far in discounting Dr. Ward's opinion about the difficulties plaintiff would have working and gave Dr. Ward's opinion somewhat more weight than Dr. VanderPlate did.

That the ALJ did so is evident from the ALJ's recognition in his RFC determination of more extensive limitations on plaintiff than Dr. VanderPlate's evaluation appears to contemplate. The ALJ restricted plaintiff not only to simple, routine, repetitive tasks and no more than occasional interaction with others, but also to a non-production and non-demanding position and no interaction with the public. Tr. 22 ¶ 5. Dr. VanderPlate had, of course, found expressly that plaintiff could relate to the public.

9
Case 5:11-cv-00609-D  Document 19  Filed 01/15/13  Page 9 of 14

The court concludes the ALJ adequately explained the weight he gave Dr. Ward's evaluation of plaintiff, including his opinion that it would be very difficult for plaintiff to work. The court accordingly rejects plaintiff's initial challenge to the ALJ's decision.

### D. ALJ's Finding on Past Relevant Work

There is evidence in the record that plaintiff worked as a custodian at retail establishments, including Walmart, and at construction sites. *See* Tr. 115, 328. Based on this evidence and the testimony of the vocational expert (Tr. 356-67), the ALJ found at step four of the sequential analysis that plaintiff had past relevant work as a custodian that he could still perform. Plaintiff contends that the ALJ erred on two grounds. First, he argues that the ALJ misidentified this work using an occupational code number not found in the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT")[6] and therefore did not adequately determine the nature of the work. Second, he contends that this prior work does not meet the requirements for past relevant work.

At the outset, the court finds that any error by the ALJ regarding plaintiff's past relevant work is harmless because he determined at step five that there was alternative work available to plaintiff. *See, e.g., Burns v. Astrue*, No. 5:11-CV-737-D, 2012 WL 6645002, at *2 (E.D.N.C. 20 Dec. 2012). Plaintiff does not challenge the ALJ's step five determination, and the court finds it in all respects lawful.

Plaintiff's contentions also fail on their merits. While it is true that the ALJ used a nonexistent DOT occupational code number to identify the position of custodian (adopting the erroneous number used by the testifying vocational expert), the error appears to be of a typographical nature. The DOT contains two titles for custodial work whose occupational code

---

[6] The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 15 Jan. 2013).

numbers are just digits away from the code number cited by the ALJ. One is the title "Cleaner, Commercial or Institutional," and it bears occupational code no. 381.687-014, just two digits off from the number used by the ALJ, no. 381.687-012.[7,8] The other title, the one immediately following the prior title, is "Cleaner, Industrial," and it bears occupational code no. 381.687-018,

---

[7] The definition of "Cleaner, Commercial or Institutional," reads in relevant part:

> 381.687-014 CLEANER, COMMERCIAL OR INSTITUTIONAL (any industry) alternate titles: clean-up worker; housekeeper; janitor; laborer, building maintenance; mopper; porter; scrubber; sweeper
>
> Keeps premises of office building, apartment house, or other commercial or institutional building in clean and orderly condition: Cleans and polishes lighting fixtures, marble surfaces, and trim, and performs duties described in CLEANER (any industry) I Master Title. May cut and trim grass, and shovel snow, using power equipment or handtools. May deliver messages. May transport small equipment or tools between departments. May setup tables and chairs in auditorium or hall. May be designated according to duties performed as Hall Cleaner (hotel & rest.); Light-Fixture Cleaner (any industry); Marble Cleaner (any industry); Metal Polisher (any industry); Paint Cleaner (any industry); or according to equipment used as Scrubbing-Machine Operator (any industry).

DOT, def. of "Cleaner, Commercial or Institutional."

> The definition of "Cleaner (any industry) I Master Title," as referenced in the foregoing definition, reads in relevant part:

> Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines. Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings. Washes walls, ceiling, and woodwork. Washes windows, door panels, and sills. Empties wastebaskets, and empties and cleans ashtrays. Transports trash and waste to disposal area. Replenishes bathroom supplies. Replaces light bulbs. Classifications are made according to type of establishment in which work is performed. Typical classifications are CLEANER, COMMERCIAL OR INSTITUTIONAL (any industry); CLEANER, HOSPITAL (medical ser.); CLEANER, HOUSEKEEPING (any industry); CLEANER, INDUSTRIAL (any industry); HOUSECLEANER (hotel & rest.).

DOT, Master Titles and Defs., Def. of "Cleaner (any industry) I."

[8] The exertional level for this title is heavy. DOT, def. of "Cleaner, Commercial or Institutional." The fact that the ALJ specified as heavy the exertional level for the occupational title he cited does not mean that the title "Cleaner, Commercial or Institutional" is inapplicable. The ALJ's finding like the underlying vocational expert testimony appears to relate to plaintiff's work as he performed it. *See* Tr. 24 ¶ 6; 356. In any event, the ability to do work at the heavy exertional level includes the ability to perform work at the medium level. 20 C.F.R. §§ 404.1567(d), 416.967(d).

just six digits away from that cited by the ALJ.[9] These are the only two titles in the same division (no. 687) of this occupational group (no. 381) conceivably applicable to plaintiff's prior work.[10]

Not surprisingly, the definitions for these two titles are broadly similar. In particular, both expressly provide that the duties involved may include those set out in the master title for cleaner, as the quoted definitions in the footnotes indicate. *See supra* notes 7 & 9. In any event, because the nature of the work a custodian performs is commonly known, the ALJ's error in the DOT occupational code number cannot reasonably be deemed an indication that he did not understand or adequately identify the demands of the custodial work plaintiff performed.

As to his second contention, work qualifies as past relevant work if "it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial

---

[9] This title reads in relevant part:

> 381.687-018 CLEANER, INDUSTRIAL (any industry) alternate titles: clean-up worker; janitor; sanitor; scrubber; sweeper; trash collector; vacuum cleaner; waste collector
>
> Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of following duties: Transports raw materials and semifinished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, using handtruck. Arranges boxes, material, and handtrucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers. Performs other duties as described under CLEANER (any industry) I Master Title. May burn waste and clean incinerator. May pick up refuse from plant grounds and maintain area by cutting grass or shoveling snow. May operate industrial truck to transport materials within plant. May start pumps to force cleaning solution through production machinery, piping, or vats. May start pumps to lubricate machines. May be designated according to area cleaned as Alley Cleaner (textile); Can-Filling-Room Sweeper (beverage); Casting-And-Locker-Room Servicer (plastic-synth.); Ceiling Cleaner (any industry); Engine-Room Cleaner (any industry); Floor Cleaner (any industry); Overhead Cleaner (any industry).

DOT, def. of "Cleaner, Industrial."

[10] The other titles in this division are: "Central-Supply Worker," 381.687-010; "Cleaner, Laboratory Equipment," 381.687-022; "Cleaner, Wall," 381.687-026; "Patch Worker," 381.687-030; and "Waxer, Floor," 381.687-034.

gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff contends that this definition is not satisfied here because the record lacks substantial evidence that he worked as a custodian long enough for him to learn to do it. The contention is unconvincing.

Plaintiff himself testified, "I was a janitor[11]—a maintenance man for Walmart." Tr. 328. He did not say that he was in training to be a janitor, but that he actually did the job. Further, according to a disability report form, he reported that he was a custodian for six months in 1997 and again from "2003-2004." Tr. 115.

The position of custodian could clearly be learned within six months. Indeed, the specific vocational preparation ("SVP") for "Cleaner, Commercial or Institutional" is 1, signifying that only a short demonstration is needed to enable a typical worker to learn to do the job. *See* DOT, def. of "Cleaner, Commercial or Institutional"; *id.*, App. C § II (listing of SVP levels). The SVP level for "Cleaner, Industrial" is 2, indicating the need for up to one month of training. *See* DOT, def. of "Cleaner, Industrial"; *id.*, App. C § II. Unskilled work generally, which includes work as a custodian, requires no more than 30 days to learn. *See* 20 C.F.R. §§ 404.1568, 416.958; Tr. 24 ¶ 6 (ALJ's finding that plaintiff's custodial work was unskilled), 356 (vocational expert's testimony to same effect). Thus, even if the 30-day standard were deemed applicable to plaintiff's prior custodial work, the foregoing evidence substantiates that it was satisfied. Although plaintiff cites earnings information in the record to challenge the evidence that he worked as a custodian for six months in 1997, the ALJ cannot be said to have erred in relying on plaintiff's own statements about his work history, which constitute substantial evidence in

---

[11] Although plaintiff suggests that the term "janitor" as used by him in his testimony connotes a different occupation from "custodian" as used by the ALJ in his decision, plaintiff has certainly not demonstrated that to be the case. Instead, plaintiff clearly appeared to be referring to maintenance work generally. The definitions of "Cleaner, Commercial or Institutional" and "Cleaner, Industrial" both list "janitor" as an alternative title for the occupation. *See supra* notes 7 & 9. While there is a separate occupation group "Janitors" in the DOT, assigned no. 382, there is no evidence that plaintiff had any knowledge of that occupational group or intended "janitor" as he used it to refer to that occupational group.

support of his determination. *See* Soc. Sec. Ruling 82-62, 1982 WL 31386, at *3 (1982) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.").

The court concludes that the ALJ committed no reversible error in connection with his finding regarding plaintiff's past relevant work. The court accordingly rejects this second and final challenge to the ALJ's decision.

### III.     CONCLUSION

After careful consideration of the ALJ's decision, the court concludes that it based on proper legal standards and supported by substantial evidence of record. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 16) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 13) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections must be filed within 14 days after service thereof.

This, the 15th day of January 2013.

_____
James E. Gates
United States Magistrate Judge